IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DEPARTMENT OF EDUCATION,<br>STATE OF HAWAII, | ) | CIVIL NO. 10-00362 LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| T.G., by and through his<br>Parents CHERYL G. and RAYMOND<br>G.,, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING THE
HEARINGS OFFICER'S MAY 28, 2010 DECISION**

Before the Court is an appeal by Plaintiff Department
of Education, State of Hawai`I ("Plaintiff") of a hearings
officer's Findings of Fact, Conclusions of Law, and Decision
("Hearing Decision"),[1] filed May 28, 2010, concluding that
Defendant T.G. was denied a free appropriate public education
("FAPE") in violation of the Individuals with Disabilities
Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. § 1401 <u>et
seq.</u> Plaintiff appealed the Hearing Decision on June 24, 2010
and filed its opening brief on October 20, 2010.  On November 22,
2010, Defendants T.G., by and through his parents, Cheryl and
Raymond G. (collectively, "Defendants"), filed their responsive
brief.  Plaintiff filed its reply on December 6, 2010.

_____

[1] The Hearing Decision can be found in the Administrative
Record on Appeal ("ROA") at 309-18.

This matter came on for hearing on February 1, 2011. Gary Kam, Esq., appeared on behalf of Plaintiff. Stanley Levin, Esq., appeared on behalf of Defendants. Defendant Cheryl G. was also present. On February 8, 2011, both parties filed supplemental briefs. After careful consideration of the briefs and the arguments of counsel, the Court HEREBY AFFIRMS THE HEARING DECISION IN PART, REVERSES IT IN PART, and REMANDS the case for further proceedings consistent with this decision.

## BACKGROUND

### I.  Factual History

T.G. is a seven-year-old student diagnosed with Autism. He is eligible for special education and related services from Plaintiff under the category of Autism. [Hrg. Decision at 3.]

On July 23, 2009, T.G.'s home school, Gustav H. Webling Elementary School ("Webling") in the Central Oahu School District ("School District"), held an Individualized Education Program ("IEP") meeting to review and revise his IEP. T.G.'s parents, Cheryl and Raymond G. (collectively, "Parents"), attended that meeting. [Id.] The IEP meeting culminated in the issuance of T.G.'s 2009-2010 IEP for his first grade year. [ROA, Exh. 1, at 29-45 (07/23/09 – Individualized Education Program).] The IEP provided T.G. with: (1) 1650 minutes per week of special education; (2) 810 minutes per quarter of speech language

therapy; (3) 1740 minutes per week of in-school individualized

instructional support; (4) 180 minutes per week of behavioral

intervention services; (5) 360 minutes per month of parent

counseling; (6) occupational therapy consultation on an as-needed

basis; (7) extended school year services; and (8) transportation

to and from school.  [Id. at 43.]

By letter dated July 30, 2009, Parent Cheryl G.

objected to T.G.'s placement in a special education class and

informed Webling Principal Sherrylyn Yamada ("Principal Yamada")

that she intended to enroll T.G. in a private preschool program

at Kaimuki Christian School ("Kaimuki").  [ROA, Exh. 1, at 49.]

In response, Principal Yamada advised Parents that Kaimuki "is

considered a unilateral placement and [the Department of

Education] is not obligated to pay for tuition or related

services."  [ROA, Exh. 1, at 51 (08/27/09 – Letter from Principal

Yamada to Parents).]

In addition to placing T.G. at Kaimuki, Parents hired a

lead therapist and skills trainers to provide services including

"1:1 therapy at home or in school, shadowing at school, pairing,

shadowing during any authorized outing or natural environmental

activity, and observations in different environments[.]"  [Hrg.

Decision at 4.]  Parents also hired a speech language pathologist

to provide T.G. with sixty minutes per week of speech therapy and

an occupational therapist to provide him with sixty-minute

therapy sessions every other week.  Finally, Parents have taken T.G. to weekly gymnastics sessions.  [Id.]

As of May 28, 2010, Parents had paid $70,798.87 in private school and home program expenditures.  These costs include, but are not limited to, "tuition, transportation, individualized instructional support services in and out of school, lead therapist services, speech and language services, occupational therapy services and other miscellaneous expenses related to his program including by [sic] not limited to lunch, uniforms, supplies and extracurricular activities[.]"  [Id.]

## II.  **Procedural History**

On January 5, 2010, Defendants filed a request with Plaintiff for an impartial due process hearing.  [ROA, Exh. 1, at 55-57.]  A School District employee received the request on January 7, 2010.  [Id. at 59 (01/07/10 – Certified Mail Return Receipt).]  Plaintiff did not hold a resolution session within fifteen days of Defendants' request for an impartial hearing. Plaintiff also failed to ensure that the Hawai`i Department of Commerce and Consumer Affairs, Office of Administrative Hearings ("DCCA") convened a due process hearing by March 23, 2010, the approximate deadline for issuing a due process hearing decision. The School District did not transmit Defendants' request for an impartial hearing to the DCCA until April 6, 2010.  [Hrg. Decision at 5.]

4

The Hearing Decision in this case arises from
Defendants' Motion for Summary Disposition, filed with the DCCA
on April 1, 2010. [ROA, Exh. 1, at 1-259.] On April 19, 2010,
Plaintiff filed a memorandum in opposition to Defendants' motion.
[ROA, Exh. 5, at 272-96.] On April 22, 2010, the matter came on
for hearing. The issue was whether Defendants were entitled to
summary disposition as a result of Plaintiff's failure to
organize a resolution session, convene a due process hearing, and
ensure the issuance of a timely decision. [Hrg. Decision at 5.]

In a letter dated April 22, 2010, Hearings Officer
Craig H. Uyehara ("Hearings Officer") informed the parties that
he intended to grant Defendants' motion. He also directed
Defendants to submit proposed findings of facts and conclusions
of law. [ROA, Exh. 6, at 297.] Defendants submitted the
requested findings and conclusions on or about May 6, 2010.
[ROA, Exh. 7, at 298-308 (Proposed Findings of Fact; Conclusions
of Law).]

On May 28, 2010, the Hearings Officer issued a decision
concluding that there was no genuine issue of material fact and
that the moving party was entitled to judgment as a matter of
law. [Hrg. Decision at 9.] "[T]he uncontroverted evidence
established that notwithstanding its receipt of [Defendants']
Request for Impartial Hearing on January 7, 2010, [Plaintiff]
failed to ensure that a timely resolution session and due process

hearing occurred and a timely decision issued." [Id. at 7.] The Hearings Officer explained that a failure to provide a timely due process hearing is not an unimportant or technical violation of the procedural safeguards provided for in the IDEA, but rather a "denial of a fundamental component of the due process protections afforded by the statute." [Id. at 8.] As a result, the Hearings Officer granted Defendants' motion, concluding that "the failure to convene a timely resolution session, hold a timely due process hearing, and ensure that a timely decision was issued to the parties resulted in a denial of FAPE." [Id. at 9.]

The Hearings Officer awarded Defendants reimbursement for the costs of placement at Kaimuki for the 2009-2010 school year as well as for related expenses. The Hearings Officer also awarded Defendants reimbursement for the costs of providing T.G. with a FAPE until such time as FAPE is made available. [Id.]

Plaintiff appealed the Hearing Decision to the Circuit Court of the First Circuit on June 24, 2010. Defendants removed the case to the district court on June 30, 2010. In its opening brief, Plaintiff argues that the Hearings Officer ignored genuine issues of material fact with respect to both the procedural and substantive aspects of T.G.'s IEP. Plaintiff also contends that the Hearings Officer failed to adequately examine the appropriateness of T.G.'s private school placement before granting reimbursement.

In their responsive brief, Defendants contend that this case presents no genuine issues of material fact and that the reimbursement award for T.G.'s private educational expenses is proper under the IDEA.

In its reply, Plaintiff argues that T.G. received a FAPE because there was neither a loss of educational opportunity nor an infringement of Defendants' right to participate in the IEP formulation process.

## DISCUSSION

## I.    IDEA Overview

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs."  <u>Hoeft ex rel. Hoeft v. Tuscon Unified Sch. Dist.</u>, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing <u>Honig v. Doe</u>, 484 U.S. 305, 310, 108 S. Ct. 592, 597, 98 L. Ed. 2d 686 (1988)).  It ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).

The IDEA defines FAPE as

    special education and related services that –
       (A) have been provided at public expense,

> under public supervision and direction, and
> without charge;
> (B) meet the standards of the State
> educational agency;
> (C) include an appropriate preschool,
> elementary school, or secondary school
> education in the State involved; and
> (D) are provided in conformity with the
> individualized education program required
> under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the

IDEA, a state educational agency receiving federal funds must

evaluate a student, determine whether that student is eligible

for special education, and formulate and implement an IEP.  <u>See

generally</u> 20 U.S.C. § 1414.  The IEP is to be developed by an

"IEP Team" composed of, *inter alia*, school officials, parents,

teachers and other persons knowledgeable about the child.  §

1414(d)(1)(B).

"Procedural flaws in the IEP process do not always

amount to the denial of a FAPE."  <u>L.M. ex rel. Sam M. v.

Capistrano Unified Sch. Dist.</u>, 556 F.3d 900, 909 (9th Cir. 2009)

(citing <u>W.G. ex rel. R.G. v. Bd. of Trs. of Target Range Sch.

Dist. No. 23</u>, 960 F.2d 1479, 1484 (9th Cir. 1992)) (some

citations omitted).  In essence, Ninth Circuit precedent requires

the a harmless error analysis.  <u>See id.</u>  Once a procedural

violation of the IDEA is identified, the court "must determine

whether that violation affected the substantive rights of the

parent or child."  <u>Id.</u> at 909 (citations omitted).

"'[P]rocedural inadequacies that result in the loss of

educational opportunity, or seriously infringe the parents'
opportunity to participate in the IEP formulation process,
clearly result in the denial of a FAPE.'" Id. (quoting Target
Range, 960 F.2d at 1484) (alteration in original) (some citations
omitted).

If a parent disagrees with the contents of an IEP, the
parent may challenge the contents thereof by demanding an
administrative due process hearing to be conducted by the local
or state educational agency. See 20 U.S.C. § 1415(b)(6),
(f)(1)(A). Within fifteen days of receiving notice of the
parents' request for a due process hearing, the educational
agency must convene a "resolution session." §
1415(f)(1)(B)(i)(I); 34 C.F.R. § 300.510(a)(1). If the
educational agency does not resolve the matter within thirty days
of receiving the initial hearing request, all of the applicable
timelines for a due process hearing under § 1415(f) commence.
See § 1415(f)(1)(B)(ii); see also 34 C.F.R. § 300.510(b). The
educational agency

> must ensure that not later than 45 days after the
> expiration of the 30 day period under §
> 300.510(b), or the adjusted time periods described
> in § 300.510(c) –
>> (1) A final decision is reached in the
>> hearing; and
>> (2) A copy of the decision is mailed to each
>> of the parties.

34 C.F.R. § 300.515(a).

Parents may also send their student to a private

program and seek retroactive tuition reimbursement from the state.  See Forest Grove Sch. Dist. v. T.A., 129 S. Ct. 2484, 2493, 2496 (2009) (citations omitted).  Where parents unilaterally withdraw a child from public school, they "do so at their own financial risk[.]"  Id. at 2496 (citations and internal quotation marks omitted).  Parents challenging an IEP are entitled to reimbursement only if "a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act."  Id. (citations and internal quotation marks omitted); see also 34 C.F.R. § 300.148(c).

## II. **Standard of Review**

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the court –
>> (i) shall receive the records of the administrative proceedings;
>> (ii) shall hear additional evidence at the request of a party; and
>> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that "'due weight'" be given to the administrative proceedings.  L.M., 556 F.3d at 908 (quoting Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)) (some citations omitted).  The amount of deference accorded is

subject to the court's discretion.  <u>J.W. ex rel. J.E.W. v. Fresno</u>
<u>Unified Sch. Dist.</u>, 626 F.3d 431, 438 (9th Cir. 2010) (citing
<u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir.
1987)).  In reaching that determination, the court should
consider the thoroughness of the hearings officer's findings,
increasing the degree of deference where said findings are
"'thorough and careful.'"  <u>L.M.</u>, 556 F.3d at 908 (quoting
<u>Capistrano Unified Sch. Dist. v. Wartenberg</u>, 59 F.3d 884, 892
(9th Cir. 1995)).  "Substantial weight" should be given to the
hearings officer's decision when it "evinces his careful,
impartial consideration of all the evidence and demonstrates his
sensitivity to the complexity of the issues presented."  <u>Cnty. of</u>
<u>San Diego v. Cal. Special Educ. Hearing Office</u>, 93 F.3d 1458,
1466-67 (9th Cir. 1996) (citation and quotation marks omitted)).
Such deference is appropriate because "if the district court
tried the case anew, the work of the hearing officer would not
receive 'due weight,' and would be largely wasted."  <u>Capistrano</u>
<u>Unified Sch. Dist. v. Wartenberg ex rel. Wartenberg</u>, 59 F.3d 884,
891 (9th Cir. 1995).  "[T]he ultimate determination of whether an
IEP was appropriate," however, "is reviewed <u>de novo</u>."  <u>A.M. ex</u>
<u>rel. Marshall v. Monrovia Unified Sch. Dist.</u>, 627 F.3d 773, 778
(9th Cir. 2010) (citing <u>Wartenberg</u>, 59 F.3d at 891).

A court's inquiry in reviewing IDEA administrative
decisions is twofold:

> "First, has the State complied with the procedures
> set forth in the Act?  And second, is the
> individualized educational program developed
> through the Act's procedures reasonably calculated
> to enable the child to receive educational
> benefits?"  [Rowley, 458 U.S. at 206-07]
> (footnotes omitted).  "If these requirements are
> met, the State has complied with the obligations
> imposed by Congress and the courts can require no
> more."  Id. at 207.

J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 947 (9th Cir.

2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on

the party challenging the administrative ruling.  Hood v.

Encinitas Union Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007)

(citations omitted).  The challenging party must show, by a

preponderance of the evidence, that the hearing decision should

be reversed.  J.W., 626 F.3d at 438 (citing Clyde K. v. Puyallup

Sch. Dist., No. 3, 35 F.3d 1396, 1399 (9th Cir. 1994)).

## III. **Analysis**

Plaintiff argues that the Hearings Officer ignored

genuine issues of material fact with respect to both the

procedural and substantive prongs of the Rowley test.  Plaintiff

also contends that the Hearings Officer failed to adequately

assess the appropriateness of T.G.'s private school placement.

### A. **Procedural Compliance**

With respect to the procedural prong, Plaintiff first

argues that "[o]nly procedural flaws which result in the denial

of educational opportunities for the child or the serious

12

infringement of the parents' right to participate in the IEP process will result in a denial of FAPE." [Opening Br. at 11 (citing Target Range, 960 F.2d at 1484).] Plaintiff insists that "none the [sic] declarations or exhibits proffered by Defendants in their Motion [for Summary Disposition] showed that T.G. suffered any loss of educational opportunity" and that T.G.'s placement at Kaimuki during the 2009-2010 school year prevented such a depravation. [Id. at 12 (citing ROA, Exh. 1 (Motion for Summary Disposition).] Plaintiff also claims that it did not "seriously infringe[] on Defendants' opportunity to participate in the IEP formation process. . . . [because] Defendants participated in the July 23, 2009 IEP meeting that was the subject of the January 5, 2010 request for impartial hearing." [Id. (citing ROA, Exh. 1, Exh. A, (IEP).]

        In support of the argument that the 34 C.F.R. § 300.515(a) timeline violation did not result in a denial of FAPE, Plaintiff seeks to distinguish Blackman v. District of Columbia, 277 F. Supp. 2d 71 (D.D.C. 2003), from the immediate case. Plaintiff argues that Blackman concerned a school district with a systemic problem in meeting the IDEA's procedural requirements. Plaintiff claims that the School District in the instant case, unlike that in Blackman, did not suffer from systemic setbacks in the scheduling of due process hearings. [Id. at 13 (noting that Plaintiff is unaware of other due process requests not processed

in a timely fashion).] Rather, any deficiencies were
"unintentional or unknowing[.]" [Id. at 14.]

Finally, Plaintiff argues that Defendants should have
invoked a voluntary procedural remedy available under 34 C.F.R. §
300.510(b)(5). [Opening Br. at 10-11.] Section 300.510(b)(5)
provides that, if the educational agency does not hold a
resolution session within fifteen days of receiving notice of the
request for an impartial hearing, "the parent may seek the
intervention of a hearing officer to begin the due process
hearing timeline." Plaintiff suggests that Defendants should
have proactively sought intervention rather than waiting silently
for the expiration of § 300.515(a)'s seventy-five-day deadline.
[Opening Br. at 11.]

Defendants respond to Plaintiff's first argument by
contending that Plaintiff caused per se harm to T.G. by failing
to comply with the IDEA's due process obligations. [Responsive
Br. at 10-11.] Defendants rely on the holding of the District
Court for the District of Columbia in Blackman, which states:

> The conclusion that a per se harm results from the
> denial of a free appropriate education stemming
> from the failure to provide a timely due process
> hearing relieves plaintiffs from any burden to
> articulate an additional, particularized harm.
> When a plaintiff's rights to the due process
> hearing are circumscribed in significant ways, a
> plaintiff need not show prejudice in order to
> demonstrate injury. It follows that where [an
> educational agency] has outright denied a child a
> timely due process hearing, [it] cannot claim that
> the denial of a free appropriate education has not

14

occurred.  It has.

277 F. Supp. 2d at 80 (citation omitted).  They also quote <u>Massey</u>
<u>v. District of Columbia</u>, 400 F. Supp. 2d 66, 75 (D.D.C. 2005), a
case decided after the 2004 reauthorization of the IDEA, holding
that a school district denied a student a FAPE where it failed
to: issue a timely placement; respond appropriately to the
parents' due process hearing request; and hold a timely
resolution session.  As the court noted in <u>Massey</u>: "Many of the
procedural safeguards in the IDEA are extremely technical,
spelling out particular deadlines and required content.  This
kind of detail embodies the purpose of a statute prescribing
administrative – *i.e.*, procedural – remedies."  <u>Id.</u> at 73
(citations omitted).  For these reasons, Defendants claim that
"[t]he failure to abide by the statutory commands, including
deadlines set forth in the procedural safeguards impedes not only
a child's right to FAPE, but significantly impedes a Parent's
right and opportunity to participate in the decision-making
process regarding the provision of FAPE."  [Responsive Br. at 8.]

Second, Defendants reject Plaintiff's argument that
T.G. suffered no loss of educational opportunity because of his
private school placement during the 2009-2010 school year.  [<u>Id.</u>
at 14-16.]  Defendants argue that parents should not be penalized
for placing their children in a private school as a result of a
denial of FAPE:

15

"The issue here is not the parents' financial
ability to fund their children at private schools
pending the outcome of a due process hearing.  The
harm is the denial by [the educational agency] of
a free appropriate education, and this harm is not
dependant on the financial resources of an
individual plaintiff's family."

[Id. at 15 (quoting Blackman, 277 F. Supp. 2d at 81).].

Third, Defendants reject Plaintiff's argument that they
should have sought the intervention of a hearings officer under
§ 300.510(b)(5) after the lapse of the fifteen-day resolution
session deadline.  Defendants explain that the language of
§ 300.510(b)(5) is permissive – parents "may seek" the
intervention of a hearings officer – and that the burden for
scheduling a timely due process hearing rests with the
educational agency.  [Id. at 9-10.]

Finally, Defendants argue that this case is not the
first instance in which Plaintiff has "failed to properly ensure
that a resolution session was convened and/or a final decision
reached."  [Id. at 3 n.3.]  Defendants cite Kainoa C. v.
Department of Education, a 2008 DCCA hearing decision concluding
that the Hawai`i Department of Education's four-month delay in
responding to an amended request for impartial hearing was in
breach of the IDEA's fifteen-day resolution session requirement.
[Id., Decl. of Susan K. Dorsey, Exh. 1 (Kainoa C. v. Dep't of
Educ., DOE-SY0607-132, Order Granting Petitioners' Motion for
Summary Disposition, filed 5/28/08), at 2-3.]  The hearings

officer in <u>Kainoa C.</u> granted petitioners' motion for summary disposition and awarded the parents reimbursement for the costs of their child's private school placement and related expenses. [<u>Id.</u>]

The IDEA's procedural safeguards are designed to achieve its substantive objections.  As the Ninth Circuit has explained: "'When the elaborate and highly specific procedural safeguards embodied in [IDEA] are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid.'"  <u>J.G. v. Douglas Cnty. Sch. Dist.</u>, 552 F.3d 786, 794 (9th Cir. 2008) (quoting <u>Rowley</u>, 458 U.S. at 205, 102 S. Ct. 3034) (alteration in original).

> In drafting the IDEA, "Congress placed every bit as much emphasis upon compliance with procedures . . . as it did upon the measurement of the resulting IEP against a substantive standard." <u>Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 205-06, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982).  Procedural compliance "would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP."  <u>Id.</u> at 206, 102 S. Ct. 3034.

<u>R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.</u>, 496 F.3d 932, 937-38 (9th Cir. 2007) (alterations in original).  The Ninth Circuit has cautioned, however, that "[n]ot every procedural violation . . . is sufficient to support a finding that the child

in question was denied a FAPE." <u>N.B. v. Hellgate Elementary Sch.</u>

<u>Dist. ex rel. Bd. of Dirs., Missoula Cnty.</u>, 541 F.3d 1202, 1208

(9th Cir. 2008) (quoting <u>Amanda J. ex rel. Annette J. v. Clark</u>

<u>Cnty. Sch. Dist.</u>, 267 F.3d 877, 892 (9th Cir. 2001)).

"'[P]rocedural inadequacies that result in the loss of

educational opportunity, or seriously infringe the parents'

opportunity to participate in the IEP formulation process,

clearly result in the denial of a FAPE.'" <u>L.M. ex rel. Sam M. v.</u>

<u>Capistrano Unified Sch. Dist.</u>, 556 F.3d 900, 909 (9th Cir. 2009)

(quoting <u>Target Range</u>, 960 F.2d at 1484) (alteration in

original).

This Court is unaware of any Ninth Circuit case law

concerning the denial of a due process hearing under

§ 300.515(a). As noted by both the Hearings Officer and

Defendants, the most apposite case is <u>Blackman</u>, which held that a

failure to provide a timely due process hearing within the forty-

five day statutory deadline constituted a denial of FAPE and

caused a <u>per se</u> harm to the disabled students. As explained by

the court in <u>Blackman</u>,

> [w]here there is a denial of a free appropriate
> education because no hearing has been held and no
> determination has been issued, and a proper
> placement therefore has not been made, there
> results a <u>per se</u> harm to the student . . . .
> Indeed, each day a child is denied a free
> appropriate education by such procedural
> dereliction of a school system he or she is harmed
> yet again.

18

277 F. Supp. 2d at 79 (citing Cox v. Brown, 498 F. Supp. 823, 828-29 (D.D.C. 1980)).

Two district courts in the Ninth Circuit have invoked Blackman in reviewing procedural violation claims under the IDEA. In J.R. ex rel. W.R. v. Sylvan Union School District, the United States District Court for the Eastern District of California explained that "[t]he procedural mandates of the [IDEA] are so significant that, in some circumstances, failure to comply with the mandates 'can itself constitute the denial of a free appropriate education.'" No. S-06-2136-LKK-GGH-PS, 2008 WL 682595, at *11 (E.D. Cal. Mar. 10, 2008) (quoting Blackman, 277 F. Supp. 2d at 79).[2] In E.M. ex rel. E.M. v. Pajaro Valley Unified School District, the United States District Court for the Northern District of California suggested that, while a failure to hold a due process hearing may rise to a denial of FAPE, the issuance of an administrative IDEA decision beyond § 300.515(a)'s deadline alone did not constitute such a denial. No. 06-04694-JF, 2006 WL 3507926, at *6 (N.D. Cal. Dec. 5, 2006). The court in Parajo Valley found that Blackman and Massey were factually distinguishable from the case before it because "[t]he plaintiffs in [Blackman and Massey] were denied hearings, not to mention

---

[2] The district judge fully adopted the Findings and Recommendations of the magistrate judge. See J.R. ex rel. W.R. v. Sylvan Union Sch. Dist., No. CIV S-06-2136 LKK GGH PS, 2008 WL 2345103 (E.D. Cal. June 5, 2008).

19

decisions, within the statutory time frame . . . ." Id.
(emphasis in original).

Plaintiff's efforts to distinguish Blackman from the
instant case are unpersuasive.  While there is no evidence that
Plaintiff suffers from a systemic problem in responding to due
process hearing requests as the school district in Blackman did,
such a finding is not necessary.  Where an educational agency has
violated the IDEA's procedural safeguards, the key inquiry is
whether "that violation affected the substantive rights of the
parent or child."  L.M., 556 F.3d at 909; see also 20 U.S.C.
§ 1415(f)(3)(E)(ii).

The Court also rejects Plaintiff's argument that
parents must seek the intervention of a hearings officer under
§ 300.510(b)(5) if the educational agency does not hold a
resolution session within fifteen days of receiving a due process
hearing request.  The resolution session procedure, a conflict
resolution mechanism established by the 2004 reauthorization of
the IDEA, does not require such intervention.  Rather, the
language of the regulation is unambiguously permissive: "if the
[educational agency] fails to hold the resolution meeting . . .
or fails to participate in the resolution meeting, the parent may
seek the intervention of a hearing officer to begin the due
process hearing timeline."  § 300.510(b)(5) (emphasis added).
Intervention is a voluntary remedy available to parents wishing

to accelerate the forty-five-day timeline for a hearing decision, a timeline which otherwise commences upon the expiration of the thirty-day resolution period.  <u>See</u> § 300.510(b)(1); § 300.515(a).

In light of the primacy that due process hearings have in ensuring both parents' and students' substantive rights under the IDEA, the Court adopts the <u>Blackman</u> rule that, where an educational agency has outright denied a student a timely due process hearing, the student has been deprived of a FAPE and need not show prejudice in order to demonstrate injury.  Such a dereliction is not a harmless error; it violates the parents' basic rights and results in a <u>per</u> <u>se</u> harm to the student.

In the present case, Defendants filed a request for an impartial hearing on January 5, 2010.  A School District employee received the request on January 7, 2010.  The deadline for holding a resolution session lapsed on January 22, 2010.  The deadline for convening a due process hearing and issuing a final decision lapsed on or about March 23, 2010.[3]  [Hrg. Decision at 5.]  Plaintiff's failure to provide a resolution session, convene a due process hearing, and issue administrative decision within the timelines established by § 300.510 and § 300.515 violated Defendants' substantive rights.  <u>See</u> <u>L.M.</u>, 556 F.3d at 909.  The Court therefore CONCLUDES that Plaintiff's failure to abide by

---

[3] Plaintiff conceded during the hearing on February 1, 2011 that its failure to adhere to these deadlines constituted a procedural violation under the IDEA.

the procedural guarantees of the IDEA denied T.G. a FAPE and caused him to suffer a <u>per</u> <u>se</u> injury.

**B.** **<u>Substantive Compliance</u>**

Plaintiff argues that "Defendants were required to prove that the IEP was not reasonably calculated to convey educational benefit upon T.G." [Opening Br. at 14.] Plaintiff insists that "[t]his prong of <u>Rowley</u> is fact intensive and can only be resolved through an evidentiary hearing." [<u>Id.</u>] Plaintiff explains that the declarations and exhibits submitted by Defendants show, at most, "that there is disagreement between the school and Defendants and their private providers as to the type and amount of services T.G. required in order to benefit from his education, as well as the appropriate educational placement for T.G." [<u>Id.</u> at 15 (footnote omitted).] Defendants do not address Plaintiff's substantive adequacy argument on appeal.

As previously noted, procedural flaws in the IEP process do not necessarily constitute a denial of a FAPE. <u>L.M.</u>, 556 F.3d at 909. In <u>L.M.</u>, the Ninth Circuit stated:

> Once we find a procedural violation of the IDEA, we must determine whether that violation affected the substantive rights of the parent or child. [P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE. Here, Parents do not contend that by limiting Dr. Lenington's ability to observe, the District caused a lost educational opportunity.

> Therefore, we are concerned only with whether the procedural violation significantly restricted Parents' participation in the IEP process.

Id. (alteration in original) (citations and quotation marks omitted). In the present case, this Court cannot determine on the existing record whether there was a lost educational opportunity. As in L.M., however, the Court need only be concerned with whether the procedural violation significantly restricted the parents' participation in the IEP process. Thus, given this Ninth Circuit jurisprudence and the Court's present finding of a procedural violation resulting in a denial of FAPE, the Court CONCLUDES that it need not review the substantive adequacy of T.G.'s IEP.

### C.     Reimbursement for Private Education Expenditures

Plaintiff argues that Defendants are not entitled to reimbursement because the Hearings Officer failed to examine whether T.G.'s private school placement was appropriate. Plaintiff contends that the Hearings Officer reached an appropriateness determination without "an evidentiary hearing on this issue" or any "analysis to support [his] conclusion[.]" [Opening Br. at 17.] Plaintiff argues that, because "Defendants have not provided evidence that [Kaimuki] was appropriate and met the needs of T.G.[,]" they have not met their burden under the IDEA. [Id. at 18.]

Defendants concede that the Hearings Officer did not

make a specific finding about the appropriateness of T.G.'s private school placement. [Defs.' Suppl. Br. at 3.] They request that, if the Court remands this case for such a finding, the Hearings Officer "be ordered to make findings on the sole issue of the appropriateness of the Parents [sic] selected program based upon the existing record that was before him at the time of the oral argument on April 22, 2010." [Id. at 4.]

Under 34 C.F.R. § 300.148©, reimbursement for private school expenditures is available

> [i]f the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary school, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate.

Parents who unilaterally transfer a child from a public school to a private school usually do so "at their own financial risk." Forest Grove Sch. Dist. v. T.A., 129 S. Ct. 2484, 2496 (2009) (citations and internal quotation marks omitted).

The Hearing Decision raises the appropriateness of T.G.'s private placement on two occasions. In the first instance, the Hearings Officer states that Kaimuki is "a small private school that provides [T.G.] with an appropriate academic program in the least restrictive environment." [Hrg. Decision at

24

3.] In the second instance, the Hearings Officer states that "Parents have paid $70,798.87 to provide [T.G.] with an appropriate education that meets his unique educational needs." [Id. at 4.] These statements present a contradiction. On the one hand, the Hearings Officer states that Kaimuki offers T.G. an "appropriate academic program." On the other hand, the Hearings Officer indicates that T.G.'s "appropriate education" includes both Kaimuki's program as well as Parents' supplemental expenses for both in-school and home therapy services. Importantly, the record reveals that the overwhelming majority of Parents' reimbursement expenditure – approximately $61,851.42 – is for services independent from Kaimuki's program: $20,668.27 for the lead therapist, $38,748.80 for the skills trainers, $2,039.35 for the speech language pathologist, $395.00 for the occupational therapist, and $110 for gymnastics classes. [Id.; ROA, Exh. 1, at 15 (03/25/10 – Declaration of Parent Cheryl G.).] That leaves approximately $8,837.45 in expenses paid directly to Kaimuki.[4]

While the Court finds that Defendant failed to provide T.G. with a FAPE, it cannot determine with certainty the

_____

[4] Defendants' financial agreement forms for Kaimuki, [ROA, Exh. 1, at 69-76 (2009-2010 Financial Agreement Form for New Students),] indicate that Parents paid Kaimuki $8,285 in tuition and related fees [Hrg. Decision at 3]. Parent Cheryl G. has confirmed this payment. [ROA, Exh. 1, at 14 (03/25/10 – Declaration of Parent Cheryl G.).] The discrepancy in calculations may be attributable to Parents' additional payment for T.G.'s lunch service, an amount not included in the $8,285 figure. [Id.; Hrg. Decision at 3.]

appropriateness of his private school placement.  This issue was

neither briefed nor argued at the administrative level.[5]  While

one of the declarations attached to Defendants' Motion for

Summary Disposition comments on the appropriateness of T.G.'s

private school placement and home program, [ROA, Exh. 1, at 22-23

(03/23/10 – Declaration of Ana Carolina King),] the Court is not

willing to restrict the Hearings Officer's review of this matter

to the record as it existed on April 22, 2010.  Such a limitation

would deprive Plaintiff of the opportunity to be heard on a

critical matter in this case.

        Given the Hearing Decision's dearth of

"appropriateness" analysis and the conflicting statements about

the adequacy of Kaimuki's program, the Court FINDS that the

Hearing Decision is not "thorough and careful" with respect to

this issue and therefore not entitled to deference.  The Court

therefore REMANDS this case to the Hearings Officer for the

limited purpose of conducting further proceedings on the issue

whether T.G.'s private placement was appropriate.

<u>CONCLUSION</u>

        On the basis of the foregoing, the Court HEREBY AFFIRMS

IN PART AND REVERSES IN PART the Hearings Officer's Findings of

---

[5] The Court notes that Plaintiff's failure to affirmatively
address the appropriateness of T.G.'s private placement during
the Motion for Summary Disposition proceedings did not constitute
a waiver of that issue.

Fact, Conclusions of Law and Decision of May 28, 2010.  The Court REVERSES AND REMANDS the Findings of Fact, Conclusions of Law and Decision of May 28, 2010 for further proceedings as to the issue of the appropriateness of T.G.'s private school placement for the purpose of reimbursement.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 28, 2011.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**DEPARTMENT OF EDUCATION, STATE OF HAWAII V. T.G., ETC., ET AL; CIVIL NO. 10-00362 LEK; ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING THE HEARINGS OFFICER'S MAY 28, 2010 DECISION**